# EXHIBIT 2

***Platform Access Agreement***

***Updated as of January 1, 2022***

This Platform Access Agreement (this "*PAA*") is by and among the following entity applicable, based on the region specified: Uber Technologies, Inc. in California; and Uber USA, LLC in all other U.S. states, territories and possessions (collectively, "*Uber*") and, (a) if you are accepting this PAA on behalf of a company (the "*Company*") in the business of providing for-hire transportation service (including by operating a taxi) ("*For-hire Service*"), such Company, and/or (b) if you are a principal, employee or contractor, or otherwise operating under the authority of, such Company that provides For-hire Service and is authorized to accept the relevant portions of this PAA, then you are accepting the relevant portions of this PAA as a driver (a "*Driver*"). For the sake of clarity and depending on the context, references to "*we*," "*our*" and "*us*" may also refer to the appropriate Uber-affiliated contracting entity accordingly or Uber collectively and references to "*you*" or "*your*" mean the Company and/or, depending on the context, your Drivers. If you accept this Agreement as a Driver please read Section 12.2 which governs how this document applies to you.

This PAA governs your access to our Platform (defined below) which facilitates your provision of For-hire Service, to account holders seeking to access certain types of For-hire Service ("*Riders*") for themselves and/or their guests.

Access to our technology platform includes access to our technology application (the "*Driver App*") that, amongst other things, facilitates For-hire Service between you and Riders; as well as websites and all other associated services, including payment and support services, provided by Uber, its affiliates or third parties (collectively, our "*Platform*").

Your access to our Platform is also governed by the applicable terms found on our website, including without limitation, the [Community Guidelines](), [Referral Policies](), other applicable Uber standards and policies (including, without limitation, Uber's safety standards, the [accessibility]() [policies]() and [U.S. Service Animal Policy]()) and, except as provided in Section 13.9 below, any other agreements you have with us (including those related to how you choose to interact with our Platform, the services you choose to provide and where you chose to provide them) (collectively with this PAA, this "*Agreement*"), which are incorporated by reference into this Agreement. By accepting this Agreement, you confirm that you have read, understand and accept the provisions of this Agreement and intend to be bound by this Agreement. This Agreement is effective as of the date and time you accept it.

1.      **Relationship**

**1.1.    Company's Relationship with Uber.**

(a)    The relationship between you and Uber is solely as independent business enterprises, each of whom operates a separate and distinct business enterprise that provides a service outside the usual course of business of the other. This is not an employment agreement and you are not an employee of Uber. You confirm the existence and nature of that contractual relationship each time you access our Platform. We are not hiring or engaging you to provide any service; you are engaging us to provide you access to our Platform. Nothing in this Agreement creates, will create, or is intended to create, any employment, partnership, joint venture, franchise, or sales representative relationship between you and us. The parties do not share in any profits or losses. You have no authority to make or accept any offers or representations on our behalf. You are not our agent and you have no authority to act on behalf of Uber.

(b)    We do not, and have no right to, direct or control you. Subject to Platform availability, you decide when, where and whether (a) you want to offer For-hire Service facilitated by our Platform and (b) you want to accept, decline, ignore or cancel a Ride (defined below) request; provided, in each case, that you agree not to discriminate against any potential Rider in violation of the Requirements (defined below). Subject to your compliance with this Agreement, you are not required to accept any minimum number of Rides in order to access our Platform and it is entirely your choice whether to provide For-hire Service to Riders directly, using our Platform, or using any other method to connect with Riders, including, but not limited to other platforms and applications in addition to, or instead of, ours. You understand, however, that your Riders' experiences with your Rides, as determined by Rider input, may affect your ability to access our Platform or provide Rides.

**1.2.    Your Relationship with Your Drivers.** You will ensure that your Drivers understand and comply with the obligations set forth in this Agreement, including without limitation those set forth in Section 2. You have the sole responsibility for any obligations or liabilities to your Drivers that arise from your relationship with them (including any obligations or liabilities relating to the provision of For-hire Services). You acknowledge and agree that you exercise sole control over your Drivers and will comply with all applicable laws (including tax, social security and employment laws) governing or otherwise applicable to your relationship with your Drivers. You acknowledge and agree that you are at all times responsible and liable for the acts and omissions of your Drivers, including their interaction with us or any third party, even where such vicarious liability may not be mandated under applicable law.

**2.    Our Platform**

**2.1.    General**. While using our Driver App, you may receive lead generation and other technology-based services that enable those operating independent business

enterprises like you to provide For-hire Service requested by Riders ("*Rides*"). Subject to the terms and conditions of this Agreement, Uber hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of this Agreement, to use our Platform (including the Driver App) solely for the purpose of providing Rides and accessing services associated with providing Rides.

      **2.2.    Compliance.**

      (a)    You are responsible for identifying, understanding, and complying with (i) all laws (including, but not limited to, the Americans with Disabilities Act and applicable laws governing your collection, use, disclosure, security, processing and transfer of data), rules and regulations that apply to your provision of Rides (including whether you are permitted to provide For-hire Service at all) in the jurisdiction(s) in which you operate (your "*Region*") and (ii) this Agreement (collectively, the "*Requirements*"). Subject to applicable law, you are responsible for identifying and obtaining any required license (including ensuring your Drivers have the appropriate driver's license for their Region), permit, or registration required to provide any For-hire Service that you provide using our Platform. Notwithstanding anything to the contrary in this Agreement, for the avoidance of doubt, your ability to access and use our Platform is at all times subject to your compliance with the Requirements. You agree not to access or attempt to access our Platform if you are not in compliance with the Requirements.

      (b)    The Americans with Disabilities Act imposes obligations including the obligation to transport Riders with service animals and does not contain exceptions for allergies or religious objections. We have the right to and you consent to the permanent deactivation of your Driver App account and the permanent termination of your contractual relationship with us if, based on the evidence, we conclude that you knowingly refused a Ride request from a Rider with a service animal, or if we receive plausible reports from Riders of more than one cancellation or refusal by you alleged to be on the basis of the presence of a Rider's service animal.

      **2.3.    Your Provision of Transportation Services to Riders.** You represent, warrant and covenant that (a) you have all the necessary expertise and experience to provide Rides in compliance with the Requirements and standards applicable to the For-hire Service, (b) your access and use of our Platform, and provision of For-hire Service, in your Region is permitted by the Requirements (including any age requirements), and (c) all such access and use of our Platform will be in compliance with the Requirements. You are responsible for, and bear all costs of, providing all equipment, tools and other materials that you deem necessary or advisable and are solely responsible for any obligations or liabilities arising from the Rides you provide.

### 2.4. Accessing our Platform.

(a)      To provide Rides you must create and register an account for your Company and each Driver whom you decide may receive Ride requests through our Platform. All information you provide to us must be accurate, current and complete and you will maintain the accuracy and completeness of such information during the term of this Agreement. Unless otherwise permitted by us in writing, you agree to only possess one account for providing Rides. You are responsible for all activity conducted on your account. For account security and Rider safety purposes, you agree not to share or allow anyone to use your login credentials or other personal information used in connection with your account, including but not limited to photos of yourself, to access our Platform. If you think anyone has obtained improper access to your account, login credentials or personal information, you are required to notify us and to change your password immediately so that we may take appropriate steps to secure your account. You agree that Uber is not responsible for any losses arising from your sharing of account credentials with a third party, including without limitation phishing. You can visit help.uber.com for more information about securing your account. You agree that Uber is not responsible for any losses arising from your sharing of account credentials with a third party, including without limitation phishing.

(b)      You represent, warrant, and covenant that you have all required authority to accept and be bound by this Agreement. If you are accepting this Agreement on behalf of your company, entity, or organization, you represent and warrant that you are an authorized representative of that company, entity, or organization with the authority to bind such party to this Agreement.

### 2.5. Background Checks and Licensing, Vehicle Standards.

(a)      During your account creation and registration, we will collect, and may verify, certain information about you and the vehicle(s) you use to provide Rides ("*your vehicle*").

(b)      You have passed any background, driving record and other checks required in connection with your provision of For-Hire Services under this Agreement (including those required or facilitated by third parties). You hereby agree to provide copies of such checks upon request and authorize and instruct us to provide copies of such checks to insurance companies, relevant regulators and/or other governmental authorities as needed for safety or other reasons, as described in our Privacy Notice.

(c)      You agree that your vehicle will be properly registered, licensed and suitable to provide Rides in your Region. You represent that at all times during the provision of any Rides your vehicle will be in your lawful possession with valid authority to use your vehicle to provide Rides in your Region. You agree that your vehicle will be in safe

operating condition, consistent with safety and maintenance standards for a vehicle of its type in the For-hire Service industry. You agree to monitor for and repair any parts that are recalled by your vehicle's manufacturer (as well as anything else the Requirements applicable to your particular Region may require).

**2.6.    Accepting Ride Requests**.

(a)    Ride requests may appear in the Driver App and you may attempt to accept, decline or ignore them. Accepting a Ride request creates a direct business relationship between you and your Rider in accordance with the terms of the transportation service the Rider has requested through our Platform. The mechanism for accepting or declining Rides may vary depending on your location and the type of Ride-request you accept. You acknowledge upon acceptance of a Ride request, your Company may incur Uber fees as described in an applicable fare addendum to this PAA.

(b)    You will choose the most effective, efficient, and safe manner to reach the destinations associated with a Ride. Any navigational directions offered in the Driver App are offered for your convenience only; you have no obligation to follow such navigational directions. You agree to transport Riders, or their guests, directly to their specified destination, as directed by the applicable person, without unauthorized interruption or unauthorized stops.

(c)    You may receive Rider information, including approximate pickup location, and you agree that your Rider may also be given identifying information about you, including your first name, photo, location, vehicle information, and certain other information you have voluntarily provided through the Driver App (collectively, "*User Information*"). Without a Rider's consent, you agree to not contact any Rider or otherwise use any of the Rider's User Information except solely in connection with the provision of Rides to that Rider. You agree to treat all Rider User Information as Confidential Information (defined below) received by you under this Agreement. You acknowledge that your violation of your confidentiality obligations may also violate certain laws and could result in civil or criminal penalties.

**2.7.    Use of Uber Branded Materials.**

(a)    Except to the extent necessary to comply with applicable law, you are not required to use, wear or display Uber's name or logo on your vehicle or clothing, or to use signaling lights, stickers, decals, or other such materials displaying Uber's name or logo (collectively "*Uber Branded Materials*").

(b)    Your authorized display of Uber Branded Materials may signify to Riders that your For-hire Service is facilitated by our Platform. Uber grants you a limited

license to use, wear, or display Uber Branded Materials provided directly to you by Uber ("*Authorized Uber Branded Materials*") when providing Rides solely for the purpose of identifying yourself and your vehicle to Riders as someone selling For-hire Service facilitated by our Platform. You agree not to (i) use, wear, or display Uber-Branded Materials that are not Authorized Uber Branded Materials, (ii) purchase, accept, offer to sell, sell or otherwise transfer Uber Branded Materials that are not Authorized Uber Branded Materials, (iii) offer to sell or sell, or otherwise transfer Authorized Uber Branded Materials, without Uber's prior written permission, or (iv) display Uber Branded Materials when you are not accessing the Platform.

(c)    The parties expressly agree that your access to, or use of, Uber Branded Materials, whether or not authorized, does not indicate an employment or other similar relationship between you and us. You further agree not to represent yourself as our employee, representative or agent for any purpose or otherwise misrepresent your relationship with us.

(d)    You agree to destroy and discard any Uber Branded Materials if your account is deactivated and/or if you lose access to the Platform.

**2.8.    Ratings**. Your Rider may be asked to comment on your services, and you may be asked to comment on your Rider. These comments can include star or other ratings and other feedback (collectively, "*Ratings*"), which we ask all parties to provide in good faith. Ratings are not confidential and you hereby authorize our use, distribution and display of your Ratings (and Ratings about you) as provided in our Privacy Notice, without attribution or further approval. We have no obligation to verify Ratings or their accuracy, and may remove them from our Platform in accordance with the standards in our Community Guidelines. You can find out more about Ratings and how they may affect your ability to access our Platform by visiting our website.

**2.9.    Location Based Technology Services; Communication Consents**.

(a)    Your device geo-location information is required for the proper functioning of our Platform, and you agree to not take any action to manipulate or falsify your device geo-location. You grant us the irrevocable right to obtain your geo-location information and to share your location with third parties, including your Riders, who will see the approximate location of your vehicle in the Rider app before and during their Ride. We may not and will not use this information to attempt to supervise, direct, or control you or your provision of Rides.

(b)    You agree that we may contact you by email, telephone or text message (including by an automatic telephone dialing system) at any of the phone numbers

provided by you, or on your behalf, in connection with your account. You also understand that you may opt out of receiving text messages from us at any time, either by replying "STOP" or texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting us at help.uber.com. Notwithstanding the foregoing, we may also contact you by any of the above means, including by SMS, in case of suspected fraud or unlawful activity by your or on your account.

(c)     You hereby represent and warrant that (a) you have provided all notices and obtained all rights, consents and permissions (collectively, "*Consents*") necessary to provide us with personally identifiable information of any Driver provided by you to us hereunder or otherwise in connection with this Agreement; (b) you have obtained all Consents from each Driver necessary to enable us to send SMS messages or to otherwise contact each such Driver, and (c) you are in compliance, and will remain in compliance during the term of the Agreement, with all Requirements relating to data protection, privacy, identity theft, data breach, consumer protection, and data security.

3.     **Insurance**

**3.1.    Your Auto Liability Insurance for For-hire Service.** You agree to maintain on all vehicles operated by You or your Drivers commercial automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy all applicable laws in the Region. This coverage must also include any no-fault coverage required by law in the Region that may not be waived by an insured. You agree to provide Uber and its affiliates a copy of the insurance policy, policy declarations, proof of insurance identification card and proof of premium payment for the insurance policy required in this Section 3.1 upon request, and on each occasion that the insurance policy renews. You will notify us in writing immediately if any insurance policy required by Uber is cancelled. Uber shall have no right to control your selection or maintenance of your policy.

**3.2.    General Liability Insurance.** You agree to maintain commercial general liability insurance that provides protection against personal injury, advertising injury and property damage to third parties at levels of coverage required by all applicable laws in the Region.

**3.3.    Your Other Insurance for For-hire Service.** You will maintain workers' compensation insurance for you and your Drivers as required by the Requirements. If allowed by applicable law, you can insure yourself against industrial injuries by maintaining occupational accident insurance for you and your Drivers in place of workers' compensation insurance (and it is at your own risk if you decide not to). If allowed by applicable law, your subcontractors may also insure themselves against industrial injuries by maintaining occupational accident insurance for themselves in place of workers' compensation insurance

(and it is at their own risk if they decide not to).

**3.4.    Additional Insured Status.** You shall add Uber (or any Uber affiliate which may be designated by Uber from time to time) to your insurance policies required in Sections 3.1 and 3.2 above as an additional insured, and shall, upon Uber's request, provide Uber with a copy of such insurance certificate(s) within seven (7) days of such request. You will maintain the insurance policies required in Sections 3.1 and 3.2 at all times during the term of this Agreement.

**4.    Payments**

**4.1.    Instant Pay.**

(a)    **Eligibility for Instant Pay.** You must have a valid and active debit card issued in your name to use Instant Pay. Your ability to use Instant Pay is dependent upon your debit card's acceptance of fast funds; not all debit cards are eligible to accept fast funds, and the card's issuing bank may choose at any time to disable the acceptance of fast funds or enable restrictions. Certain users may not be eligible for Instant Pay, including users that access our vehicle solutions programs and those who are subject to garnishments. Your use of Instant Pay may be subject to additional restrictions and fees; more information may be found on our Instant Pay website.

(b)    **Availability of Instant Pay.** We are not able to ensure that all payments are deposited instantly. The speed at which you receive payments will depend on your bank and other factors. If your bank rejects a payment, or it fails in our system, the entire amount available for cashout in your account will be routed to your regular bank account at vault.uber.com, and you will receive the payment typically 1-3 business days later. Any Instant Pay funds not cashed out by 4AM (Local time) on Mondays, or the time we identify, which may be subject to change, will be routed to your regular bank account at vault.uber.com. If you do not have access to Instant Pay, you will continue to receive payments as described in this addendum via direct deposit, provided we have your correct banking information. We are not responsible for any fees from your bank in association with your use of Instant Pay. We reserve the right to block access to Instant Pay at any time for any reason, including for improper use of our Platform, account investigation, deactivation, or further review of Deliveries completed.

(c)    **Third-Party Provider.** The Instant Pay functionality is facilitated by a third-party provider of payments services. By using Instant Pay, you are subject to any additional terms and conditions for payment imposed by the third-party provider, which we recommend you review.

**4.2.**    Payment terms, fare calculations and payment methods are described in a separate fare addendum, which shall form part of this Agreement.

5.    **Term and Termination; Effect; Survival**

**5.1.    Term**. This Agreement is effective as of the date and time you accept it and will continue until terminated by you or us.

**5.2.    Termination by You**. You may terminate this Agreement (a) without cause at any time upon seven (7) days' prior written notice to Uber; and (b) immediately, without notice for Uber's violation or alleged violation of a material provision of this Agreement.

**5.3.    Deactivation**. You consent to and we may temporarily deactivate your account without notice to investigate whether you have engaged in, or your account has been used in, activity that is deceptive, fraudulent, unsafe, illegal, harmful to our brand, business or reputation, or that violates this Agreement (including the policies incorporated herein by reference)(any of the foregoing, a "*Material Breach or Violation*"). You also consent to and we may terminate this Agreement or permanently deactivate your account without notice if we determine in our discretion that a Material Breach or Violation has occurred.

**5.4.    Effect of Termination and Survival**. Upon termination, each party will remain responsible for its respective liabilities or obligations that accrued before or as a result of such termination. You agree to use commercially reasonable efforts to return any Uber Branded Materials, but excluding promotional materials, to an Uber Greenlight Hub or destroy them. Sections 1, 2.7, 2.9(b), 4, 5.4, 6-9, 12, 13 and 14 shall survive any termination or expiration of this Agreement.

6.    **DISCLAIMERS**

**6.1.**    WE PROVIDE OUR PLATFORM AND ANY ADDITIONAL PRODUCTS OR SERVICES "AS IS" AND "AS AVAILABLE," WITHOUT GUARANTEE OR WARRANTY OF ANY KIND, AND YOUR ACCESS TO OUR PLATFORM IS NOT GUARANTEED TO RESULT IN ANY RIDE REQUESTS. WE DO NOT WARRANT THAT OUR PLATFORM WILL BE ACCURATE, COMPLETE, RELIABLE, CURRENT, SECURE, UNINTERRUPTED, ALWAYS AVAILABLE, OR ERROR- FREE, OR WILL MEET YOUR REQUIREMENTS, THAT ANY DEFECTS WILL BE CORRECTED, THAT OUR TECHNOLOGY IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. WE WILL NOT BE LIABLE FOR ANY SERVICE INTERRUPTIONS OR LOSSES RESULTING FROM SERVICE INTERRUPTIONS, INCLUDING BUT NOT LIMITED TO SYSTEM FAILURES OR OTHER INTERRUPTIONS THAT MAY AFFECT YOUR ACCESS TO OUR PLATFORM.

**6.2.** WE PROVIDE LEAD GENERATION AND RELATED SERVICES ONLY, AND MAKE NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE ACTIONS OR INACTIONS OF THE RIDERS WHO MAY REQUEST OR ACTUALLY RECEIVE RIDES FROM YOU. WE DO NOT SCREEN OR EVALUATE THESE RIDERS. SOME JURISDICTIONS PROVIDE FOR CERTAIN WARRANTIES, SUCH AS THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, AVAILABILITY, SAFETY, SECURITY, AND NON-INFRINGEMENT. WE EXCLUDE ALL WARRANTIES TO THE EXTENT THOSE REGULATIONS ALLOW.

**6.3.** IF A DISPUTE ARISES BETWEEN YOU AND YOUR RIDERS OR ANY OTHER THIRD PARTY, YOU RELEASE US FROM LOSSES OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

**6.4.** WE MAY USE ALGORITHMS IN AN ATTEMPT TO FACILITATE RIDES AND IMPROVE THE: EXPERIENCE OF USERS AND THE SECURITY AND SAFETY OF OUR PLATFORM; ANY SUCH USE DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF ANY KIND, EXPRESSED OR IMPLIED.

7. **Information**

We may collect and disclose information from or about you when you create an account, interact with our Platform or provide Rides and as otherwise described in our Privacy Notice. Notwithstanding anything herein to the contrary (a) the collection, use, and disclosure of such information will be made in accordance with our Privacy Notice and (b) if you elect to provide or make available suggestions, comments, ideas, improvements, or other feedback or materials to us in connection with, or related to, us or our Platform, we will be free to use, disclose, reproduce, modify, license, transfer and otherwise distribute, and exploit any of the foregoing information or materials in any manner.

8. **Confidentiality**

**8.1.** **Confidential Information**. Each party acknowledges and agrees that in the performance of this Agreement it may have access to or may be exposed to, directly or indirectly, confidential information of the other party or third parties ("*Confidential Information*"). Confidential Information includes Rider User Information and the transportation volume, marketing and business plans, business, financial, technical, operational and such other, non-public information of each party (whether disclosed in writing or verbally) that such party designates as being proprietary or confidential or of which the other party should reasonably know that it should be treated as confidential. Confidential

Information does not include any information that: (a) was in the receiving party's lawful possession prior to the disclosure, as clearly and convincingly corroborated by written records, and had not been obtained by the receiving party either directly or indirectly from the disclosing party; (b) is lawfully disclosed to the receiving party by a third party without actual, implied or intended restriction on disclosure through the chain of possession, or (c) is independently developed by the receiving party without the use of or access to the Confidential Information, as clearly and convincingly corroborated by written records.

**8.2.    Obligations**. Each party acknowledges and agrees that: (a) all Confidential Information shall remain the exclusive property of the disclosing party; (b) it shall not use Confidential Information of the other party for any purpose except in furtherance of this Agreement; (c) it shall not disclose Confidential Information of the other party to any third-party, except to its employees, officers, contractors, agents and service providers ("*Permitted Persons*") as necessary to perform their obligations under this Agreement, provided Permitted Persons are bound in writing to obligations of confidentiality and non-use of Confidential Information no less protective than the terms hereof; and (d) it shall return or destroy all Confidential Information of the disclosing party, upon the termination of this Agreement or at the request of the other party; subject to applicable law and our internal record-keeping requirements.

**8.3.    Remedies.** The unauthorized use or disclosure of any Confidential Information would cause irreparable harm and significant damages, the degree of which may be difficult to ascertain. Accordingly, the parties have the right to obtain immediate equitable relief to enjoin any unauthorized use or disclosure of Confidential Information disclosed by the other party, in addition to any other rights or remedies described in Section 14, applicable law or otherwise.

**9.    Intellectual Property**

We reserve all rights not expressly granted in this Agreement. The Driver App, our Platform, and all data gathered through our Platform, including all intellectual property rights therein (the "*Platform IP*"), are and remain our property and/or that of our licensors, as applicable. Neither this Agreement nor your use of Uber's or our licensors' company names, logos, products or service names, trademarks, service marks, trade dress, other indicia of ownership, or copyrights ("*Uber Names, Marks, or Works*") or the Platform IP conveys or grants to you any rights in or related to the Platform IP, or related intellectual property rights, including Uber's Names, Marks, or Works, except for the limited license granted above. You shall not, and shall not allow any other party to: (a) license, sublicense, copy, modify, distribute, create, sell, resell, transfer, or lease any part of the Platform IP or Authorized Uber-Branded Materials; (b) reverse engineer or attempt to extract the source code of our software, except as allowed under law; (c) use, display, or manipulate any of Uber Names,

Marks, or Works for any purpose other than to provide Rides; (d) create or register any (i) businesses, (ii) URLs, (iii) domain names, (iv) software application names or titles, or (v) social media handles or profiles that include Uber Names, Marks, or Works or any confusingly or substantially similar mark, name, title, or work; (e) use Uber Names, Marks, or Works as your social media profile picture or wallpaper; (f) purchase keywords (including, but not limited to Google AdWords) that contain any Uber Names, Marks, or Works; (g) apply to register, reference, use, copy, and/or claim ownership in Uber's Names, Marks, or Works, or in any confusingly or substantially similar name, mark, title, or work, in any manner for any purposes, alone or in combination with other letters, punctuation, words, symbols, designs, and/or any creative works, except as may be permitted in the limited license granted above; (h) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any part of our Platform or data; or (i) aggregate Uber's data with competitors.

### 10.    Third-Party Services

From time to time we may permit third parties to offer their services to users of our Platform. Third-party services may be subject to additional terms (including pricing) that apply between you and the party(ies) providing such services. If you choose to access the third-party services you understand that the providers of the third-party services are solely responsible for liabilities arising in connection with the access and use of such third-party services. While we may allow users to access such services through our Platform and we may collect information about our users' use of such services, we may not investigate, monitor or check such third-party services for accuracy or completeness.

### 11.    Termination of Prior Agreements

**11.1.    Prior TSA.** This Section 11 only applies if you were a party to an effective technology services agreement (a "*Prior Agreement*") with Uber immediately prior to your acceptance of this Agreement. Except as provided in Sections 11.2 and 14 below, you and Uber hereby terminate your Prior Agreement (except as provided in the survival provision of such agreement) and the Depreciated Documents (defined below)(collectively, "Prior Documents"), effective as of your acceptance of this Agreement. The parties, respectively, hereby waive any applicable notice requirements with respect to their termination of the Prior Documents.

**11.2.    Other Agreements.** Notwithstanding the termination of your Prior Agreements, you hereby (a) ratify, assume and confirm your obligations under any supplements or addenda, except those that are no longer required by the Requirements or applicable to your provision of P2P Service ("*Deprecated Documents*"), accepted in connection with your Prior Agreement that are not expressly superseded by this PAA or documents accepted in connection with the acceptance of this PAA,, with such changes as

may be required to effectuate the foregoing ("*Continuing Documents*") and (b) acknowledge and agree that as of your acceptance of this Agreement such Continuing Documents are incorporated by reference and form a part of this Agreement. We hereby ratify, assume and confirm our obligations under such Continuing Documents.

**12.    Drivers**

**12.1.    Enforcement.** This Section 12.1 only applies if you accept this Agreement on behalf of a Company. By authorizing your Drivers to accept this Agreement, you expressly authorize Uber to enforce its rights under this Agreement, including under Section 5, against your Company or against any Driver individually. You agree to ratify any such action with respect to your Driver as if it was taken by you, provided that you will have the opportunity to rebut any such action on your Driver's behalf in accordance with this Agreement.

**12.2.    Acceptance by Drivers.** This Section 12.2 only applies if you accept this Agreement as a Driver. Except for Section 1.2 and 2.9(c), this Agreement applies to you, with such changes as may be required to effectuate the foregoing, to the same extent as such provisions apply to your Company. This Agreement does not entitle you to any payment by Uber, and only your Company can enforce the obligations in Section 5.2 and any provision regarding amounts payable under this Agreement will apply only to the Company. You acknowledge and agree that you maintain a contractual or employment arrangement with your Company to perform For-hire Services under that Company's operating authority and as directed by that Company. In addition to the representations and warranties set forth in Section 2.4(b), you represent and warrant that you are the legal age to form a binding contract with us in your Region. If you have an agreement (a "*P2P Agreement*") with Uber pursuant to which you provide peer-to-peer transportation services (a "*P2P Service*"), you acknowledge and agree that (x) this Agreement applies when you provide For-hire Services or access our Platform under the authority of your Company and (y) your P2P Agreement applies when you provide P2P Services.

**13.    Miscellaneous**

**13.1.    Modification**. You will only be bound by modifications or supplements to this PAA on your acceptance, but if you do not agree to them, you may not be allowed to access our Platform. Such modifications or supplements may be provided to you only via electronic means. From time to time we may modify information hyperlinked in this PAA (or the addresses where such information may be found) and such modifications shall be effective when posted.

**13.2.    Severability**. Invalidity of any provision of this Agreement does not affect the rest of this Agreement. The parties shall replace the invalid or non-binding provision with provision(s) that are valid and binding and that have, to the greatest extent possible, a similar

effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

**13.3.    Assignment**. We may freely assign or transfer this Agreement or any of our rights or obligations in them, in whole or in part, without your prior consent. You agree not to assign this Agreement, in whole or in part, without our prior written consent, and any attempted assignment without such consent is void.

**13.4.    Conflicts**. Except with respect to the Arbitration Provision, if there is a conflict between this PAA and any supplemental terms between you and us, those supplemental terms will prevail with respect to the specific conflict if explicitly provided therein, and is in addition to, and a part of, this Agreement.

**13.5.    Interpretation**. In this Agreement, "including" and "include" mean "including, but not limited to."

**13.6.    Notice**. Except as explicitly stated otherwise, any notices to us shall be given by certified mail, postage prepaid and return receipt requested to Uber Technologies, Inc., 1515 3rd Street, San Francisco, CA 94158, Attn: Legal Department. All notices to you may be provided electronically including through our Platform or by other means.

**13.7.    Governing Law**. Except as specifically provided in this PAA, this PAA is governed by the applicable law of the state where you reside (or where your entity is domiciled) when you accepted this PAA (the "*Governing Law*"). The Governing Law shall apply without reference to the choice-of-law principles that would result in the application of the laws of a different jurisdiction.

**13.8.    Entire Agreement**. Except as specifically set forth in Section 13.4 or the Arbitration Provision, this Agreement, constitutes the entire agreement and understanding with respect to the subject matter expressly contemplated herein and therein, and supersedes all prior or contemporaneous agreements or undertakings on this subject matter.

**13.9.    No Incorporation.** Notwithstanding anything herein to the contrary, no agreement, term or other provision relating to your indemnification obligations to us will be considered incorporated by reference, or otherwise a part of, this Agreement.

**13.10.    Existing Documents.** Defined terms in documents accepted in connection with your acceptance of this Agreement that reference a technology services agreement shall

be deemed amended to reference analogous terms defined in this Agreement, including by replacing the term "Technology Services Agreement" with "Platform Access Agreement".

13.11. **Questions**. If you have questions about our Platform, you may contact us by logging on to drivers.uber.com and navigating to the "Contact Us" section.

14.    **Arbitration Provision**

**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS BELOW. THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST US. IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**

14.1.    **How This Arbitration Provision Applies.**

(a)    This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act. If notwithstanding the foregoing, the Federal Arbitration Act does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply.  Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

(b)    This Arbitration Provision applies to all claims whether brought by you or us, except as provided below.  This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial.  Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of

or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

(c)     Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use our Platform and Driver App as a driver, the For-hire Service that you provide, background checks, your privacy, your contractual relationship with us or the termination of that relationship (including post-relationship defamation or retaliation claims), the nature of your relationship with us (including, but not limited to, any claim that you are our employee), trade secrets, workplace safety and health, unfair competition, compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment, and claims arising under the Telephone Consumer Protection Act, Fair Credit Reporting Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 8 U.S.C. § 1324b (unfair immigration related practices), Americans With Disabilities Act, Age Discrimination in Employment Act, Fair Labor Standards Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, federal, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us or the termination of that relationship.  This Arbitration Provision also applies to all incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of our Platform and Driver App, regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to this Agreement, and regardless whether you allege that the personal injury was experienced by you or anyone.

**14.2.    Limitations On How This Arbitration Provision Applies.**

(a)     To the extent required by applicable law not preempted by the Federal Arbitration Act, nothing in this Arbitration Provision prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, U.S. Department of Labor, U.S. Securities and Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs.  Likewise, to the extent required by applicable law not preempted by the Federal Arbitration Act, nothing in this Arbitration Provision prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Arbitration Provision.  To the extent required by applicable law not preempted by the Federal Arbitration Act, this Arbitration Provision also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on those claims, even if the claims would otherwise be covered by this

Arbitration Provision.

(b)    Where you allege claims of sexual assault or sexual harassment, you may elect to bring those claims on an individual basis in a court of competent jurisdiction instead of arbitration. We agree to honor your election of forum with respect to your individual sexual harassment or sexual assault claim but in so doing do not waive the enforceability of this Arbitration Provision as to any other provision (including but not limited to Section 14.4—Class Action Waiver—which will continue to apply in court and arbitration), controversy, claim or dispute.

(c)    To the extent an Act of Congress or applicable federal law not preempted by the Federal Arbitration Act provides that a particular claim or dispute may not be subject to arbitration, such claim or dispute is excluded from the coverage of this Arbitration Provision.  Likewise, if the Federal Arbitration Act does not apply to a claim or dispute, any claims or disputes that may not be subject to arbitration under applicable state arbitration law will be excluded from the coverage of this Arbitration Provision.

(d)    *Impact on Pending Litigation*: This Arbitration Provision shall not affect your standing with respect to any litigation against us brought by you or on your behalf that is pending in a state or federal court or arbitration as of the date of your receipt of this Arbitration Provision ("*pending litigation*").  Therefore:

- If you are or previously were a driver authorized to use our Platform and Driver App, and at the time of your receipt of this Agreement you were not bound by an existing arbitration agreement with us, you shall remain eligible to participate in any pending litigation to which you were a party or putative class, collective or representative action member regardless of whether you opt out of this Arbitration Provision.

- If, at the time of your receipt of this Agreement, you were bound by an existing arbitration agreement with us, that arbitration agreement will continue to apply to any pending litigation, even if you opt out of this Arbitration Provision.

- If, at the time of your receipt of this Agreement, you were not previously a driver authorized to use our Platform and Driver App, then this Arbitration Provision will apply to covered claims and any pending litigation unless you opt out of this Arbitration Provision as provided below.

(e)    Either party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief the arbitration provided in this Arbitration Provision may be rendered ineffectual.

### 14.3.    Governing Rules, Starting The Arbitration, And Selecting The Arbitrator

(a)    <u>For claims involving use of the Platform and Driver App in California</u>: The ADR Services, Inc. Arbitration Rules ("*ADR Rules*") will apply to arbitration under this Arbitration Provision; however, if there is a conflict between the ADR Rules and this Arbitration Provision, including but not limited to whether any arbitration may proceed on an individual basis, this Arbitration Provision shall govern. The ADR Rules are available by, for example, searching Google.com to locate "ADR Services, Inc. Rules," or by clicking here: https://www.adrservices.com/services/arbitration-rules/. If, for any reason, ADR Services, Inc. will not administer the arbitration and the parties cannot mutually agree on a neutral arbitration provider, either party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in California. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis. Once an arbitration provider is appointed under 9 U.S.C. § 5, or the parties mutually agree upon a neutral arbitration provider, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider; however, if there is a conflict between the rules of the designated arbitration provider and this Arbitration Provision, including but not limited to whether any arbitration may proceed on an individual basis, this Arbitration Provision shall govern.

(b)    <u>For claims involving use of the Platform and Driver App outside California</u>:  The parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises.  Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis. Once the parties mutually agree upon a neutral arbitration provider, or an arbitration provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider; however, if there is a conflict between the rules of the designated arbitration provider and this Arbitration Provision, including but not limited to whether any arbitration may proceed on an individual basis, this Arbitration Provision shall govern.

(c)    Prior to commencing arbitration with the applicable arbitration provider, the party bringing the claim in arbitration must first demand arbitration in writing

within the applicable statute of limitations period.  The demand for arbitration shall include identification of the parties (including, if you are bringing the claim, the phone number and email address associated with your driver account, and the city in which you reside), a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought and the amount in controversy.  Any demand for arbitration made to us shall be sent to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or served upon Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here).  Any demand for arbitration made to you shall be sent via electronic email to the email address associated with your driver account.

(d)    The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome.  The parties therefore agree that, before the arbitration demand is submitted to the applicable arbitration provider, the party bringing the claim shall first attempt to informally negotiate with the other party, in good faith, a resolution of the dispute, claim or controversy between the parties for a period of 60 days ("*negotiation period*"), unless extended by mutual agreement of the parties.  During the negotiation period, any otherwise applicable statute of limitations shall be tolled.  In connection with informal negotiations during the negotiation period, the parties shall participate telephonically or in person in at least one informal dispute resolution conference. All informal dispute resolution conferences shall be individualized such that a separate conference must be held each time either party intends to commence individual arbitration; multiple individuals initiating claims cannot participate in the same informal dispute resolution conference.  If either party is represented by counsel, that party's counsel may participate in the informal dispute resolution conference, but the party also must appear at and participate in the conference.  Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing individual arbitration.  If the parties cannot reach an agreement to resolve the dispute, claim or controversy within the negotiation period, the party bringing the claim shall submit the arbitration demand to the applicable arbitration provider.

(e)    To commence arbitration following the conclusion of the informal dispute resolution process required by Section 14.3(d), the party bringing the claim must file the written demand for arbitration with the applicable arbitration provider and serve a copy of the demand for arbitration on Uber as set forth in Section 14.3(c) and by email to any counsel who represented Uber in the informal dispute resolution process.  By filing the arbitration demand with the applicable arbitration provider, the party bringing the claim in arbitration certifies that the demand complies with Rule 11 of the Federal Rules of Civil Procedure and any applicable state law equivalent.

(f)      If the parties reach agreement on an arbitrator not affiliated with the applicable arbitration provider or to use procedures either not specified in or in lieu of the applicable arbitration provider's rules (as modified by this Arbitration Provision), any such agreement shall be memorialized in writing before arbitration is commenced. If the parties are unable to agree upon an arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the arbitrator in accordance with its rules. The arbitrator will be selected from the applicable arbitration provider's roster of arbitrators. Any arbitrator selected must be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute.

(g)      Delivering a written arbitration demand to the other party will not relieve the party bringing the claim of the obligation to commence arbitration as described above. It shall always be the obligation of the party bringing the claim to commence arbitration.

(h)      <u>Mass arbitration dispute procedure</u>: If 20 or more arbitration demands of a substantially similar nature are initiated against you or us within a 180-day period by the same law firm or collection of law firms that represents the other party ("*mass arbitration demands*"), the following procedure shall apply. At the request of either party, an arbitrator shall be selected pursuant to the applicable arbitration provider's rules for selection of an arbitrator to act as a special master ("*Special Master*") to resolve threshold disputes regarding the propriety of some or all the mass arbitration demands. These threshold disputes may include, but are not limited to:

(1)    any dispute regarding filing fees owed with respect to the mass arbitration demands, including whether claimants have submitted valid fee waivers;

(2)    any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Provision with respect to processing and administering the mass arbitration demands;

(3)    any dispute regarding whether the mass arbitration demands meet the requirements set forth in Section 14.3(c) (or (e) above;

(4)    any dispute regarding whether the demands have complied with all conditions precedent to commencing arbitration, including compliance with the informal dispute resolution process described in Section 14.3(d) above;

(5)    any dispute regarding whether claimants have ever had a driver account;

(6)    any dispute regarding whether claimants are barred from

proceeding with their claims based on a prior settlement agreement or expiration of the statute of limitations;

(7) any dispute relating to representation of the same claimant by multiple law firms;

(8) any dispute regarding whether the mass arbitration demands were filed with the correct arbitration provider;

(9) any dispute regarding whether the mass arbitration demands violate Rule 11 of the Federal Rules of Civil Procedure and/or any applicable state law equivalent; and

(10) any other dispute or issue regarding the equitable and efficient initial case management of the mass arbitration demands, including, but not limited to, the timing and/or sequence of payment of any remaining filing or administrative fees or costs related to the mass arbitration demands.

Any request to appoint a Special Master pursuant to this procedure must be submitted in writing to the applicable arbitration provider, with a copy to the other party, within fifteen (15) days after filing and service (as described in Section 14.3(e)) of any arbitration demand that qualifies as part of the same group of mass arbitration demands within the meaning of this Section 14.3(h) (i.e., 20 or more arbitration demands of a substantially similar nature initiated within a 180 day period by the same law firm or collection of law firms. Mass arbitration demands initiated by a different law firm or collection of law firms shall be considered a separate group of mass arbitration demands and shall be administered separately). For the sake of clarity, the request to appoint a Special Master need not be submitted in response to the first arbitration demand that triggers the mass arbitration dispute procedure (i.e., the 20th demand), and the request is subject only to the limitations set forth in this Section 14.3(h).

Except as provided below, during the fifteen (15) day period following the filing and service of any arbitration demand that qualifies as part of the same group of mass arbitration demands, the arbitration provider shall refrain from further processing of any demands that are part of the same group of mass arbitration demands, and no further payment (i.e., other than amounts required to be paid by the party initiating arbitration at the time the arbitration demand is filed) for filing fees, administrative fees or costs, or Arbitrator fees shall be deemed due with respect to those demands. A party's decision not to invoke this procedure in response to a particular arbitration demand shall not constitute a waiver of any defense to any arbitration demand. Likewise, a party's decision not to invoke this procedure in response to a particular demand will not preclude the same party from later invoking this procedure in response to any other arbitration demand, including one that qualifies as part of the same group of mass arbitration demands as an earlier-filed demand.

The written request to appoint a Special Master must specify the arbitration demands and threshold disputes that will be submitted to the Special Master.

Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the mass arbitration demands as to which a dispute has been raised. Except for the filing fees, administrative fees or costs, or arbitrator fees that have already been assessed by the arbitration provider at the time the request to appoint a Special Master is made, no payment for filing fees, administrative fees or costs, or arbitrator fees shall be deemed due with respect to any of the mass arbitration demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Notwithstanding the foregoing, Uber shall be responsible for and agrees to pay the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

If timely requested by either party, any arbitration demand that is part of the same group of mass arbitration demands and to which a dispute has been raised shall be included as part of the same Special Master matter, even if a Special Master matter is already pending at the time that arbitration demand is filed, except that (i) a demand cannot be included if an arbitrator has already been selected for that individual demand as provided in Section 14.3(f); and (ii) a demand that might otherwise be considered part of the same group of mass arbitration demands that is filed after proceedings before a Special Master have concluded shall be considered part of a different group of mass arbitration demands.

A Special Master appointed pursuant to this procedure may award any party any appropriate remedy to which that party is entitled under applicable law (including, but not limited to, as set forth in Section 14.7) with respect to the issues presented to and decided by the Special Master, but shall have no authority to consolidate cases or decide issues related to the merits of the dispute or any other issue except as specified above. After proceedings before the Special Master have concluded, to the extent any of the mass arbitration demands are permitted to proceed, all such demands shall proceed on an individual basis only, and the applicable arbitration provider must administer them individually in accordance with the applicable arbitration provider's rules and this Arbitration Provision.

(i)     All claims in arbitration are subject to the same statutes of limitation that would apply in court.  The arbitrator (which includes the Special Master, as applicable) shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration, except that the statute of limitations and any filing fee deadlines shall be tolled

while the parties engage in the informal dispute resolution process required by Section 14.3(d).

(j)    Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision, including without limitation any claim that all or part of this Arbitration Provision is void or voidable.  An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues.  However, only a court of competent jurisdiction, and not an arbitrator, shall have exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and/or Representative Action Waiver—including, but not limited to, any claim that all or part of the Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, illegal, void, or voidable, or that a breach of either such Waiver has occurred.

**14.4.    Class Action Waiver.**

(a)    **This Arbitration Provision affects your ability to participate in class, collective, coordinated, or consolidated actions.**  Both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a class, collective, coordinated, or consolidated basis on behalf of others.  There will be no right or authority for any dispute (whether brought by you or us, or on your or our behalf) to be brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, or consolidated action, or for you or us to participate as a member in any such class, collective, coordinated, or consolidated proceeding.  Neither an arbitrator nor an arbitration provider shall have authority to hear, arbitrate, or administer any class, collective, coordinated, or consolidated action, or to award relief to anyone but the individual in arbitration.

(b)    Notwithstanding any other provision of this Arbitration Provision or the applicable arbitration provider's rules, this Class Action Waiver does not prevent you or us from participating in a classwide, collective, coordinated, or consolidated settlement of claims.

(c)    This Class Action Waiver does not and shall not be construed to preclude the mass arbitration dispute procedure set forth in Section 14.3(h).

(d)    The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining or consolidating the claims of multiple individuals against Uber in a single proceeding.  If there is a final judicial determination that any portion of this Class

Action Waiver is unenforceable or unlawful for any reason, (1) any class, collective, coordinated, or consolidated action subject to the enforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (2) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (3) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Provision; and (4) the severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Provision or the arbitrability of any remaining claims asserted by you or us.

**14.5.    Representative Action Waiver.**

(a)    **This Arbitration Provision affects your ability to participate in representative actions.**  To the maximum extent provided by law, both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a representative basis.  The parties expressly waive their right to have any dispute or claim brought, heard, administered, resolved, or arbitrated as a representative action, or to participate in any representative action, including but not limited to claims brought under any state's Private Attorneys General Act.  The parties also expressly waive their right to seek, recover, or obtain any non-individual relief.  There will be no right or authority for any dispute (whether brought by you or us, or on your or our behalf) to be brought, heard, administered, or arbitrated as a representative action, or for you or us to participate as a member in any such representative proceeding.

(b)    Notwithstanding any other provision of this Arbitration Provision or the applicable arbitration provider's rules, this Representative Action Waiver does not prevent you or us from participating in a representative settlement of claims.

(c)    This Representative Action Waiver does not and shall not be construed to preclude the mass arbitration dispute procedure set forth in Section 14.3(h).

(d)    If there is a final judicial determination that any portion of this Representative Action Waiver is unenforceable or unlawful for any reason, (1) any representative claim subject to the enforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (2) the portion of the Representative Action Waiver that is enforceable shall be enforced in arbitration; (3) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Provision; and (4) the severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Provision or the arbitrability of any remaining claims asserted by you or us.

(e)    Disputes regarding the nature of your relationship with us

(including, but not limited to, any claim that you are an employee of us), as well as any claim you bring on your own behalf as an aggrieved worker for recovery of underpaid wages or other individualized relief (as opposed to a representative claim for civil penalties) are arbitrable and must be brought in arbitration on an individual basis only, as required by this Arbitration Provision.  You agree that any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending the arbitration of your dispute regarding the nature of your relationship with us and any claim you bring on your own behalf for individualized relief.

### 14.6.    Paying For The Arbitration.

(a)    Except in the case of offers of judgment (such as under Federal Rule of Civil Procedure 68 or any applicable state law equivalents, which apply to arbitrations under this Arbitration Provision as set forth in Section 14.6(d) below), each party will pay the fees for its, his or her own attorneys and any costs that are common to both court and arbitration proceedings (such as court reporter costs and transcript fees), subject to any remedies to which that party may later be entitled under applicable law.

(b)    Each party shall follow the applicable arbitration provider's rules applicable to initial arbitration filing fees, except that your portion of any initial arbitration filing fee shall not exceed the amount you would be required to pay to initiate a lawsuit in federal court in the jurisdiction where the arbitration will be conducted. To the extent a fee waiver is sought, it must include all information and be submitted in the appropriate form required by applicable law. Except as specified in the mass arbitration dispute procedure set forth in Section 14.3(h), after (and only after) you have paid your portion of any initial arbitration filing fee, we will make up the difference, if any, between the fee you have paid and the amount required by the applicable arbitration provider's rules.

(c)    In all cases where required by applicable law not preempted by the FAA, we will pay the arbitrator's fees, as well as all fees and costs uniquely associated with arbitration (such as room rental).  Otherwise, such fee(s) will be apportioned between the parties in accordance with said applicable law and this Arbitration Provision, and any disputes in that regard will be resolved by the arbitrator (which includes the Special Master, as applicable).  You agree to not oppose any negotiations between the applicable arbitration provider and Uber relating only to our fees.

(d)    At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms.  If the offer is accepted, the offer with proof of acceptance shall be

submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by Uber is not accepted by you, and you fail to obtain a more favorable award, you shall not recover your post-offer costs and shall pay Uber's costs from the time of the offer.

**14.7.    The Arbitration Hearing And Award.**

(a)    Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the arbitrator a brief. The arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the arbitrator.

(b)    The arbitrator shall apply applicable controlling law and will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.

(c)    Under no circumstances is the arbitrator bound by decisions reached in separate arbitrations. The arbitrator's decision, including any decision by a Special Master (as applicable), shall be binding only upon the parties to the arbitration that are the subject of the decision.

(d)    The arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) that applies to the case.

(e)    The arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law equivalent.

(f)    A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The arbitrator's findings of fact and conclusions of law shall not be binding or have any preclusive effect on any other arbitration, except as specified in and limited by Section 14.3(h).

**14.8.    Your Right To Opt Out Of This Arbitration Provision.**

(a)    Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us. If you do not want to be subject to this

Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 14.2, and the limitations set forth in this Section 14.8).  To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside.

(b)    An email sent by your agent or representative (including your counsel) shall not be effective.  Your email may opt out yourself only, and any email that purports to opt out anyone other than yourself shall be void as to any others.  Should you not opt out of this Arbitration Provision within the 30-day period, you and Uber shall be bound by the terms of this Arbitration Provision.  You will not be subject to retaliation if you exercise your right to opt out of this Arbitration Provision.

(c)    Any opt out of this Arbitration Provision does not affect the validity of any other arbitration agreement between you and us. If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect.

(d)    Neither your acceptance of this Agreement nor your decision to opt out of this Arbitration Provision will affect any obligation you have to arbitrate disputes not specified in this Arbitration Provision pursuant to any other agreement you have with us or any of our subsidiaries or affiliate entities.  Likewise, your acceptance of or decision to opt out of any other arbitration agreement you have with us or any of our subsidiaries or affiliate entities shall not affect any obligation you have to arbitrate claims pursuant to this Arbitration Provision.

**14.9.    Enforcement Of This Arbitration Provision**. You have the right to consult with counsel of your choice concerning this Arbitration Provision and to be represented by counsel at any stage during the arbitration process.  Except as provided in Sections 14.2 and 14.8 of this Arbitration Provision, and/or unless this Arbitration Provision is deemed invalid, unenforceable, or inapplicable, this Arbitration Provision replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Arbitration Provision.  In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.  This Arbitration Provision will survive the termination of your relationship with us, and it will continue to apply if your relationship with us is ended but

later renewed.

**By clicking "Yes, I agree," (a) if accepting on behalf of the Company, the Company expressly acknowledges that it has read, understood, and considered the consequences of this Agreement, it agrees to be bound by the terms of this Agreement, and it is legally competent to enter into this Agreement with Uber and (b) if accepting as a Driver, I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, that I agree to be bound by the terms of this Agreement, that I have been directed by the Company to enter this Agreement with Uber and that I am legally competent to enter into this Agreement with Uber.**