# EXHIBIT 10

**From:** Nick Davoli <ndavoli@uber.com>
**Sent:** Monday, September 30, 2024 3:46 PM
**To:** Testimony
**Subject:** [EXTERNAL] Comment of Uber USA, LLC Re: Int 276
**Attachments:** 2024.09.30_Uber USA_City Council Comment re_ Int. 276.pdf

Good afternoon,

Please see Uber USA, LLC's attached comment concerning Int 276. Int 276 was heard by The Committee on Transportation and Infrastructure on Friday, September 27, 2024.

Thank you,

**Nick Davoli** (he/him)
Senior Counsel - US Regulatory
ndavoli@uber.com |

**BEFORE THE NEW YORK CITY COUNCIL**
**COMMITTEE ON TRANSPORTATION AND INFRASTRUCTURE**

**Int 0276-2024: Wrongful deactivation of high-volume for-hire vehicle drivers.**

Public Hearing: September 27, 2024

**COMMENTS OF UBER USA, LLC[1]**

Josh Gold
175 Greenwich St.
New York, NY 10001
Email: jgold@uber.com

Uber appreciates the opportunity to provide additional feedback regarding Int. 276, which aims to address the deactivation of High-Volume For-Hire Vehicle Drivers. While Uber supports the fair treatment of drivers, we have several concerns with the current language.

Int. 276 creates a complicated regulatory framework for a subset of New York City's For-Hire industry, assigns oversight to an agency without any experience dealing with the nuances of the industry, and captures temporary regulatory access restrictions.

It is critical that the agency charged with enforcing new for-hire driver protections has an understanding of the For-Hire industry. Uber submits that the Taxi & Limousine Commission (TLC), and not the Department of Consumer and Worker Protection, is best suited to implement new driver protections. Similarly, Uber suggests any new legislation apply equally to all For-Hire Vehicle bases and medallion operators, to ensure all TLC-licensed drivers are afforded the same protections, regardless of the type of services they provide.

Uber believes the intent of Int. 276 is to provide drivers with additional protections before and after their access to earnings opportunities via high-volume for-hire services is indefinitely restricted. However, as drafted Int. 276 encompasses temporary account restrictions, often caused by regulatory compliance or document expiration issues. Uber recommends that the focus of Int. 276 be narrowed to permanent deactivations that indefinitely prevent eligible drivers from driving. This change can be accomplished by revising the definition of 'deactivation' to a permanent restriction or long-term (e.g., 30 days or more) loss of platform access, and providing for an exception for any restrictions caused by documentation or regulatory compliance issues.

---

[1] Uber USA, LLC is a wholly-owned subsidiary of Uber Technologies, Inc. and is licensed as a High-Volume For-Hire Service in New York City.

Uber believes in transparency and, except for extreme situations, provides drivers with resources and notifications before deactivating their accounts. This includes alerting drivers that their account may be at risk of deactivation, so that they can take steps to avoid losing access. Although Int. 276 references exceptions to the required notifications for 'egregious misconduct' the term is not defined. Uber suggests egregious misconduct be defined to include conduct that endangers the physical safety of others, intentionally causes economic harm, or is physically or verbally threatening, harassing, or abusive. Moreover, it should be clear that the conduct need not occur while the driver is operating on the platform, so long as the conduct relates to the driver's fitness to provide services on the platform. Additionally, language should allow for discretionary decision making outside of the defined categories.

Uber also suggests pre-deactivation notices be limited to no more than 3 days before a driver is deactivated. As outlined above, drivers at risk of being deactivated receive notifications and are given the opportunity to change their conduct. Allowing drivers who have violated Uber's Platform Access Agreement or Community Guidelines to remain on the platform during a notice period may jeopardize the safety of other users.

In the unfortunate event that a driver is deactivated, Uber created the Driver Review Center which allows a deactivated driver to request their account receive an additional human review within one year of the deactivation. As of 2024, most submissions to the Driver Review Center are resolved within 72 hours. Since 2016, Uber's agreement with the Independent Drivers Guild (IDG) provides New York City drivers with an additional appeal process, where the IDG assists drivers in providing additional detail and nuance better explaining their case. In 2023, Uber updated the IDG process, resulting in a 20% increase in reactivations following an IDG appeal. Uber requests that the backward looking eligibility provision be removed from Int. 276.

Over the past several years, Uber has heavily invested in processes to provide drivers with information necessary to avoid account deactivation, implemented the Driver Review Center for direct driver appeals, and partnered with an independent third party for additional appeals. Uber stands behind these processes and looks forward to continued engagement with the Council as Int. 276 is revised.