# EXHIBIT 11

# Uber

**Subject: VOTE NO on Int. 276-A: Protect Passenger Safety and Victim Privacy**

Dear Council Member,

I am writing to urgently ask you to **vote NO on Proposed Int. No. 276-A**. While intended to be a worker protection bill, this legislation contains dangerous loopholes that will dismantle critical safety networks, compromise the privacy of survivors, and keep dangerous drivers on our streets. If passed, this bill will have three devastating consequences for public safety in New York City:

1. It Undermines the "[Industry Sharing Safety Program](#)" (ISSP)

Across the country, companies like Uber and Lyft participate in data-sharing programs to help ensure that a driver banned for serious sexual assault or physical assault fatalities cannot simply switch apps and pick up new passengers. Int. 276-A would make it significantly harder to rely on that shared information to protect riders.

- **The Problem:** The bill requires that, in any challenge to a deactivation, the company proves "just cause" and shows that it undertook a "fair and objective investigation" before removing a driver.
- **The Result:** If Uber receives a report through ISSP that a driver was banned from Lyft for sexual assault, Uber effectively cannot deactivate that driver without re-investigating the incident themselves. In practice, that will discourage companies from acting quickly on credible safety information from other platforms and weaken cross-platform tools that keep bad actors from reoffending.

2. It Mandates Dispatching Drivers Who Have Already Been Deactivated to Unsuspecting Riders

The bill requires a dangerous 14 day "lame duck" period during which drivers who have already met the threshold for termination can continue to work.

- **The Problem:** For performance or safety issues that do not qualify under the bill's narrow definition of "egregious misconduct," account sharing, or a pattern of repeated fraudulent behavior, the bill requires companies to give drivers 14 days' advance notice before a deactivation takes effect.
- **The Result:** That means a driver who has effectively been deactivated can continue to accept trips for up to two weeks. This creates a real risk that frustrated drivers with documented safety or quality problems will continue picking up unsuspecting New Yorkers while their termination is pending.

3. It Pushes Victim Reports Into Government Channels, Even When Survivors Don't Want That

Victim advocates argued that survivors should be able to choose when and where they report incidents. This includes the right to report incidents to rideshare platforms without being automatically pushed into a government or police investigation. This bill takes this

agency away from survivors.

- **The Problem:** The bill's strict evidentiary standards mean the only true "safe harbor" that allows a platform to deactivate a driver without fear of a lawsuit is if the driver's license is suspended or revoked by the TLC.
- **The Result:** Companies will be effectively incentivized to funnel every serious passenger complaint directly to the TLC to secure a license suspension. This may be against the wishes of victims who report the incident to the platforms to ensure appropriate action was taken, but are not ready or willing to endure government interrogations or law enforcement proceedings.

By comparison, a similar bill for high-volume third party delivery workers, **Int. 1332-A**, solves for these problems by:

- Including a comprehensive definition of "egregious misconduct," which explicitly includes "theft" and "willful destruction of property" as well as dangerous, outrageous or illegal activity.
- Not including a 14-day waiting period. Workers lose access immediately after failure to follow clear guidelines made available to them in advance.

As such, we are not urging you to vote no on **Int. 1332-A**. Unfortunately, as laid out above, **Int. 276-A** does not leave us with the same assurances.

New York City should be raising the bar on safety, not dismantling the tools that protect riders; we urge you to **vote NO on Int. 276-A** until these dangerous loopholes are closed.

Sincerely,

Josh Gold
Senior Director, Policy & Communications