# EXHIBIT 12

# Dunn Isaacson Rhee

New York City Council
City Council Office
250 Broadway
New York, NY 10007

December 17, 2025

Dear Councilmembers:

We write on behalf of our client, Uber Technologies, Inc. ("Uber"), to express serious legal concerns regarding Proposed Int. No. 276-A (the "Bill"), which purports to address "Wrongful deactivation of high-volume for-hire vehicle drivers." Uber is proud of its efforts to improve its deactivation processes. Regrettably, the Bill is rife with infirmities that interfere with Uber's legal rights. Uber urges the City to revise the Bill to rectify these issues, as Uber wishes to avoid litigation. Below we provide an outline of a number of the legal claims which may be the subject of litigation should the City refuse to make appropriate changes to the Bill.

**Impairment of Contractual Rights.** The Bill impermissibly interferes with the rights established in existing contracts between Uber and drivers through Uber's Platform Access Agreement, violating the rights established in the Contract Clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts."). For many years, Uber has maintained written agreements with drivers that lay out the parties' rights and expectations regarding deactivation, which are based on Uber's determination of whether the driver violated Uber's policies and standards. Uber Platform Access Agreement § 5.3 ("You consent to and we may temporarily deactivate your account without notice to investigate whether you have engaged in, or your account has been used in, activity that is deceptive, fraudulent, unsafe, illegal, harmful to our brand, business or reputation, or that violates this Agreement (including the policies incorporated herein by reference) (any of the foregoing, a 'Material Breach or Violation'). You also consent to and we may terminate this Agreement or permanently deactivate your account without notice if we determine in our discretion that a Material Breach or Violation has occurred."). The Bill stands to significantly impair those contractual relationships and rights by effectively replacing the terms of those agreements with an ambiguous "just cause" standard and numerous procedural mandates that would delay deactivation by weeks. Such changes would restrict Uber's right to determine whether to do business with drivers that Uber has determined failed to meet the contractually-established standards. *In re Workers' Comp. Refund*, 46 F.3d 813, 820 (8th Cir. 1995) ("[R]egulation does not automatically foreclose the possibility of contract impairment. Courts have found substantial impairment of contracts in heavily regulated areas of commerce.").

The City has not offered, and cannot demonstrate, a sufficient and legitimate public purpose for this impairment of contractual rights, particularly given that the law would privilege the interests of a small group (deactivated drivers) over not only Uber's interests but also the interests of passengers using the Uber platform and who count on Uber's commitment to safety. *See Allied Structural Steel*

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



*Co. v. Spannaus*, 438 U.S. 234, 248-50 (1978) (distinguishing legislation "enacted to protect . . . a narrow class" from laws "enacted to deal with a broad, generalized economic or social problem").

The Bill treats the Uber Platform like a public utility, to which all drivers have an immutable right of access. Uber is a private business, not a public utility. There is no public interest in ensuring continued earning opportunities on Uber with respect to drivers whose accounts have been deactivated pursuant to Uber's contractual rights, including Uber's Community Guidelines, which are designed to ensure a safe and pleasant experience for all users. Nor, given the burden on Uber and potential implications for passenger safety, is this Bill a reasonable and appropriate means for achieving any legitimate public purpose. *See Melendez v. City of New York*, 16 F.4th 992, 1042 (2d Cir. 2021) ("reasonableness and appropriateness concerns are raised by a legislative decision to provide financial relief to certain persons not through public funds but by destroying the contract expectations of other persons").

**Retroactive Application in Violation of Due Process Rights.** The Bill purports to contain a novel provision allowing drivers deactivated years ago to re-litigate their deactivations with Uber.  It thus alters Uber's contractual rights not just prospectively but retroactively as well, changing the standard that would govern review of deactivation decisions made over *the previous seven years*. As a result, the Bill could be interpreted as entitling drivers whose accounts were deactivated up to seven years ago to petition, and even sue, for reactivation based on a new "just cause" standard which did not exist at the time of the deactivation. Each such petition would require Uber to undertake costly and burdensome procedures to locate historical records, re-investigate, re-identify, and re-explain the precise reasons for deactivations that occurred years prior, and could subject Uber to the burden and expense of an "informal resolution process" and litigation for conduct in the past that comported with the standards in place at that time and could not have been expected to give rise to liability. Due process prohibits exactly this type of retroactive legislation that is not rationally related to any legitimate legislative purpose. *See Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 385-86 (2020) ("[T]here is a critical distinction for purposes of a due process analysis between prospective and retroactive legislation. As the Supreme Court has observed, retroactive legislation that reaches 'particularly far' into the past and that imposes liability of a high magnitude relative to impacted parties' conduct raises 'substantial questions of fairness.'") (citing *Eastern Enters. v. Apfel*, 524 U.S. 498, 534 (1998)).

**Infringement of First Amendment Rights.** In addition, the Bill would violate First Amendment rights by forcing Uber to engage in various forms of speech, such as notices and "informal" resolution and, even worse, to remain associated with drivers whom Uber has determined violate its policies or standards. As one example, one of Uber's core values is "Stand for Safety." Uber's publicly-expressed value of safety will be undermined if the Bill compels Uber to allow drivers who violate its policies and standards to continue using its platform, either indefinitely or pending completion of the lengthy procedures imposed by the law, or due to one of the various procedural hoops imposed by the law.

\* \* \*

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



2

Uber stands ready, eager, and willing to work with the City to find solutions to these problems with the Bill, and urges the City to engage with it in a productive process. To that end, Uber would be pleased to meet with members of the City Council to explain its work to support drivers in the deactivation process, and to discuss changes to the Bill that could address the concerns we have outlined. Uber does not wish to resort to litigation to resolve these legal issues, as has been required in the past when the City has refused to engage in a constructive dialogue before proceeding with problematic legislation or administrative action.[1]

Uber is happy to continue this conversation at your earliest convenience.[2]

Sincerely,

*/s/ Karen L. Dunn*

Karen L. Dunn (New York Bar # 4498028)
Kyle Smith (New York Bar # 5075940)
Dunn Isaacson Rhee LLP
401 9th St NW, 8th Floor
Washington, DC 20004

*Counsel for Uber*

CC:    Muriel Goode-Trufant, Corporation Counsel

---

[1] *E.g.*, "In win for Uber and Lyft, judge strikes down New York City's cruising cap," CNBC (Dec. 23, 2019), available at https://www.cnbc.com/2019/12/23/in-win-for-uber-judge-strikes-down-new-york-citys-cruising-cap.html; "Uber Doesn't Have to Raise New York City Drivers' Pay, Judge Rules," New York Times (Jan. 6, 2023), available at https://www.nytimes.com/2023/01/06/nyregion/uber-lyft-driver-pay.html; "N.Y. Judge Halts Law That Would've Raised Minimum Wage For App-Based Delivery Drivers In NYC," Forbes (July 7, 2023), available at https://www.forbes.com/sites/willskipworth/2023/07/07/ny-judge-halts-law-that-wouldve-raised-minimum-wage-for-app-based-delivery-drivers-in-nyc/; "Judge Rules in Favor of Food Delivery Apps in NYC Data-Sharing Lawsuit," Justia Legal News (Sep. 25, 2024), available at https://news.justia.com/judge-rules-in-favor-of-food-delivery-apps-in-nyc-data-sharing-lawsuit/; "Uber and DoorDash Try to Halt N.Y.C. Law That Encourages Tipping," New York Times (Dec. 16, 2025), available at https://www.nytimes.com/2025/12/16/nyregion/uber-doordash-nyc-tipping.html.

[2] For avoidance of doubt, the identification herein of certain legal infirmities is not intended to be exhaustive or to suggest that Uber assents, or has at any point in the past assented, to the propriety of any of the contents of the Bill, or any other bills or rules currently under consideration or in effect. Accordingly, nothing in this communication shall be construed as a waiver of any claims, defenses, or rights, and Uber expressly reserves all rights to seek any form of relief with respect to the Bill and all other legislation, including emergency injunctive relief.

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900

